Paul and Juanita Bazzell v. Commissioner.
Bazzell v. Commissioner
Docket No. 1243-66.
United States Tax Court
T.C. Memo 1967-101; 1967 Tax Ct. Memo LEXIS 159; 26 T.C.M. (CCH) 481; T.C.M. (RIA) 67101; May 9, 1967
Paul Bazzell, pro se, 1911 Firmona Ave., Redondo Beach, Calif. James A. Thomas, for the respondent. FORRESTER
Memorandum Findings of Fact and Opinion FORRESTER, Judge: Respondent has determined deficiencies in the income tax of petitioners for the years 1961 and 1962 in the amounts of $1,267.46 and $243.87, respectively. Concessions have been made by both parties and the only issues now remaining before us are: 1. Whether the petitioners can be allowed the benefits of the nonrecognition of gain provisions of section 1034 of the Internal Revenue Code of 1954[1] when they purchased the "new residence" more *160 than one year after the sale of the "old residence," said delay having been occasioned by the illness of petitioner husband; 2. Whether petitioners are entitled to the benefits of the instalment method (section 453) of returning income from two realty sales made in 1961 and 1962, respectively; 3. If petitioners are not so entitled to the benefits of instalment reporting, whether respondent's determinations of the fair market values of second trust deeds received by petitioners in connection with such 1961 and 1962 sales were correct; and 4. Whether respondent's reduction of claimed "selling expenses" in connection with the August 28, 1961, realty sale by $860.64 (from $3,255.68 to $2,395.04) was proper. Findings of Fact Some of the facts have been stipulated and are so found. Paul and Juanita Bazzell, presently residing at Redondo Beach, California, filed their Federal income tax returns for the years in issue with the district director of internal revenue at Los Angeles, California. On August 28, 1961, the petitioners sold a three-unit apartment building located in Manhattan Beach, California, *161 for $36,000. They had resided in and occupied one of the three units as their principal residence since they purchased the building in 1952. In connection with such sale the petitioners received from the purchaser, inter alia, the payment and satisfaction of their then existing mortgage on the subject building in the then unamortized amount of $18,806.44, and a promissory note in the face amount of $5,000 made by the purchaser and secured by a second deed of trust on the subject property. Such note was payable $50 or more per month, including interest at seven percent on the unpaid balance, with the first payment due approximately 30 days after the sale, such payments to continue for five years at which time the note was to balloon. By May of 1963 petitioners had received payments of interest on such note totaling $532.69, and its principal balance had been reduced to $4,582.69. The petitioners then sold such note for $4,124. Petitioner testified and we find that following the sale of the Manhattan Beach three-unit residence on August 28, 1961, he contracted severe arthritis of the spine and had three laminectomy operations performed on his lower back. The record is silent as *162 to the identity or location of petitioners' principal residence following the sale of the three-unit building on August 28, 1961, and until they purchased and occupied an existing house in Manhattan Beach, California, on March 11, 1963. In October 1962 the petitioners sold a house which they owned in Redondo Beach, California, for $13,750, receiving from the purchaser, inter alia, a promissory note in the fact amount of $2,950 secured by a second deed of trust on the subject property. Such note provided for payments of $26 per month including interest of seven percent on the unpaid balance and by August 1963, they had received payments of interest totaling $90.25 and the outstanding principal balance of the note was $2,859.75. In August 1963 petitioners sold this note for $2,000. In connection with Issue 4 (selling expenses of the August 28, 1961, realty sale) petitioners introduced evidence of a prepayment charge of $577.50, a reconveyance fee of $5 and a forwarding fee of $20, which three items totaling $602.50, have now been conceded as properly allowable selling expenses by respondent, and such concession will be given effect in the Rule 50 computation. The record is otherwise *163 silent as to further selling expenses in connection with this 1961 sale. Opinion Issue 1 Regardless of the unfortunate circumstance of Paul Bazzell's illness, which the petitioners contend prevented them from complying with the time limitation of section 1034, we are powerless to rewrite the statue. The stipulated facts are that petitioners' "old residence" was sold on August 28, 1961, and the "new residence" was not purchased and used by them as their principal residence until March 11, 1963, almost 19 months later. Section 1034 provides in pertinent part: (a) Nonrecognition of Gain. - If property (in this section called "old residence") used by the taxpayer as his principal residence is sold by him after December 31, 1953, and, within a period beginning 1 year before the date of such sale and ending 1 year after such date, property (in this section called "new residence") is purchased and used by the taxpayer as his principal residence, * * * Such statutory provision is unambiguous and leaves no room for interpretation or tempering because of hard or unfortunate circumstances. Issue 1 is resolved for respondent. Issue 2 Petitioners, for the first time, seem to *164 raise this issue in their brief. Neither the August 1961 nor the October 1962 realty sales were returned under the instalment method (section 453). On brief petitioners ask whether such sales can qualify and assert that they did not receive "30% down payment in cash" in connection with either sale. As to the August 1961 sale petitioners' own exhibit shows that [their] existing mortgage in the amount of almost $19,000 (approximately 52 percent of the selling price) was satisfied and as to the October 1962 sale the record shows only that the $13,750 purchase price was paid in part by a second mortgage note of $2,950. Since the burden of proof under our Rule 32 is on petitioners we must assume that the balance of the October 1962 sale (over 75 percent of the selling price of $13,750) was received by them in cash or its equivalent. Under these facts, petitioners having received "payments" during the taxable years of the respective sales of approximately 52 percent and 75 percent of such sales, it is clear that they are not entitled to report either sale on the instalment method. Section 453(b)(2)(A)(ii) provides that the instalment method of reporting may be used only if in the *165 taxable year of the sale "the payments (exclusive of evidences of indebtedness of the purchaser) do not exceed 30 percent of the selling price." Section 1.453-4(c), Income Tax Regs., provides in pertinent part: In the sale of mortgaged property the amount of the mortgage, whether the mortgage or whether the mortgage is assumed by the purchaser, shall, for the purpose of determining whether a sale is on the installment plan, be included as a part of the "selling price"; * * * Issue 3 Since petitioners are not entitled to the benefits of instalment reporting under section 453, supra, it becomes necessary to ascertain the fair market values of the second mortgage notes which they received in connection with these transactions. Section 1.453-6(a), Income Tax Regs.[2]
*166 Respondent determined that the fair market values of the respective notes were, $4,517.31 and $2,090.25. Petitioners introduced no evidence tending to show that the respondent had overvalued these notes and the record fully supports the reasonableness of respondent's valuations. Consequently, we sustain respondent in such actions. Issue 4 As shown by the findings, respondent has conceded $602.50 of his determination that the claimed August 1961 "selling expenses" were $860.64 too high. Petitioner has introduced no further evidence on this issue and consequently respondent's determination of the remaining $258.14 is sustained. Decision will be entered under Rule 50. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954.↩
2. § 1.453-6 Deferred-payment sale of real property not on installment method. (a) Value of obligations. (1) In transactions included in paragraph (b)(2) of § 1.453-4↩, that is, sales of real property involving deferred payments in which the payments received during the year of sale exceed 30 percent of the selling price, the obligations of the purchaser received by the vendor are to be considered as an amount realized to the extent of their fair market value in ascertaining the profit or loss from the transaction. * * *